UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JASON A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01690-SEB-MG |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| TRANS UNION, LLC, | ) | |
| EXPERIAN INFORMAITON SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Jason A. Williams ("Mr. Williams") brought this action against Defendant credit reporting agencies Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Experian Information Solutions, Inc. ("Experian") (hereinafter, the "CRAs") as well as his mortgage servicer, Arvest Bank ("Arvest"),[1] alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, based on alleged misrepresentations regarding the status of a mortgage payment. Dkt. 1. Now before the Court is Experian's Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6). Dkt. 24.[2] For the reasons stated below, that motion is **DENIED**.

---

[1] On March 27, 2025, following Mr. Williams and Arvest's entry into a private settlement agreement, Arvest was dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Dkt. 50, 52.

[2] Although Equifax and Trans Union initially joined the motion to dismiss, each has since entered into a private settlement agreement with Mr. Williams resolving the (respective) claims between

# BACKGROUND

## I.    Factual Averments

We take the following factual allegations in the complaint as true, as is required in any judicial review undertaken at the pleading stage. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The facts giving rise to this dispute relate to Mr. Williams's mortgage loan with Arvest. According to the complaint, Mr. Williams utilizes an "auto-draft" function to facilitate and complete his monthly mortgage payments to Arvest. The auto-draft setting allows Arvest to withdraw a preset sum of money from Mr. Williams's bank account for mortgage purposes. Unless otherwise authorized by Mr. Williams, the auto-draft function does not automatically adjust for changes in Mr. Williams's monthly obligations. (By contrast, the "auto-debit" function, another autopayment option offered by Arvest, does automatically adjust the withdrawal amount in accordance with any changes in the borrower's payment obligations.)

In January 2022, Mr. Williams's monthly mortgage obligation increased by approximately $161. Due to Mr. Williams's mistaken assumption that his bank account would automatically adjust for such changes, his January 2022 mortgage payment, which was auto-drafted on December 24, 2021, fell short of the new monthly minimum, leaving a $161 balance due and owing.

---

them. Dkt. 77 (Trans Union); dkt. 78 (Equifax). Accordingly, we address the Motion to Dismiss as to Experian only.

On January 22, 2022, Arvest "directed correspondence to" Mr. Williams notifying him that his "loan had an unapplied balance" and that, if he intended the balance to go towards a regular monthly payment, he needed to supply another $161. Compl. ¶ 26, dkt. 1. Additionally, Arvest informed Mr. Williams that, if he preferred to utilize the unapplied balance as a prepayment towards his principal or escrow, he needed to contact Arvest. According to Mr. Williams, his agreement with Arvest permits so-called "prepayments," or "payments of [p]rincipal only," when the following two conditions are satisfied: (1) the account holder "tell[s] [Arvest] in writing" of his intent to make a prepayment; and (2) the account holder is current on all monthly payments. *Id.* ¶ 27. Mr. Williams maintains that, at all relevant times, neither condition for prepayment was satisfied.

On January 25, 2022, prior to Mr. Williams's receipt of Arvest's January 22nd correspondence, a second $161-deficient mortgage payment was auto-drafted from Mr. Williams's checking account.

Based on Arvest's receipt of the December 24th and January 25th payments, Mr. Williams avers that Arvest possessed funds sufficient to satisfy his January 2022 mortgage obligations. *Id.* ¶ 29. However, as Mr. Williams later discovered (though he does not specify when), Arvest had applied the December 24th funds as a prepayment on December 27, 2021, contrary to the January 22nd correspondence and the terms of the mortgage agreement. *Id.* ¶¶ 30–32. "Thereafter," Mr. Williams alleges, "Arvest began inaccurately reporting" to the CRAs that he "was more than 30 days delinquent on his" January 2022 mortgage payment. *Id.* ¶ 33. Arvest also, according to Mr. Williams, "inaccurately report[ed] [his] monthly payment amounts and [the] dates" of his most recent mortgage payment. *Id.*

3

Mr. Williams disputed "the inaccurate reporting" with the Equifax, Trans Union, and Experian in September 2022, November 2022, April 2023, and September 2024, prompting investigations that resulted in the credit reporting agencies (independently) verifying the reported delinquency as accurate, *see generally id.* at 7–18, or, on one occasion, in Equifax temporarily removing the information from Mr. Williams's credit profile, *id.* ¶ 66.

Mr. Williams avers that the notation of a delinquent payment on his credit reports damaged his credit score. (Indeed, when Equifax temporarily removed the delinquent payment from his report, Mr. Williams alleges that his credit score improved by fifty points relative to those provided by Trans Union and Experian. *Id.* ¶ 67.) Mr. Williams further alleges that the inaccurate information "was provided to Chase Bank, Bank of America, and US Bank in May of 2024," which hindered his "efforts to purchase a vehicle." *Id.* ¶ 39.

## II.    Procedural Background

On September 27, 2024, Mr. Williams commenced this action, alleging, *inter alia*, that Equifax, Trans Union, and Experian "failed to delete or modify the Arvest reporting," despite numerous challenges to the accuracy of the information contained therein, in violation of 15 U.S.C. §§ 1681e(b) and 1681i. *Id.* ¶ 131. Mr. Williams avers that the investigations undertaken by the credit reporting agencies confirming the veracity of the reports furnished by Arvest "failed to consider all relevant information" and therefore failed to meet the FCRA's requirement that credit reporting agencies conduct reasonable investigations into the accuracy of disputed information in a consumer's file. *Id.* ¶¶ 48, 63, 79, 88, 96, 109, 117, 124.

On November 21, 2024, Equifax, Trans Union, and Experian jointly moved to dismiss and for judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Dkt. 24. (Equifax and Experian moved under Rule 12(b)(6), and Trans Union, which filed its responsive pleading on October 23, 2024, dkt. 11, moved under Rule 12(c).) On December 26, 2024, Mr. Williams filed his response in opposition, dkt. 34, and the CRAs submitted a reply on January 9, 2025. Dkt. 37. On August 11, 2025, as the dismissal motion pended, Mr. Williams and Trans Union jointly filed a notice of settlement, indicating that they had resolved all claims between them. Dkt. 77. Shortly thereafter, on August 13, 2025, Mr. Williams and Equifax also jointly filed a notice of settlement, similarly conveying that they had resolved the claims between them. Dkt. 78. In accordance with the notices of settlement, we address the pending motion to dismiss as to Experian only, the sole remaining Defendant. That motion to dismiss is fully briefed and ripe for ruling.

## LEGAL STANDARD

To survive a challenge to the sufficiency of a complaint, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim becomes facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We accept "all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir.

2000). However, "we need not . . . give weight to unsupported conclusions of law." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

## DISCUSSION

Consumer reporting agencies, such as Experian here, "collect consumer information supplied by furnishers," such as Arvest, "compile it into consumer reports, and provide those reports to authorized users." *Denan v. Trans Union, LLC*, 959 F.3d 290, 295 (7th Cir. 2020) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)). In performing these tasks, the Fair Credit Reporting Act requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" published to consumers' credit reports, 15 U.S.C. § 1681e(b); and, when a consumer disputes "the completeness or accuracy of any item of information contained" therein, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ," *id.* § 1681i(a)(1)(A). To advance a claim under either § 1681e(b) or § 1681i, "a plaintiff [must] show that a consumer reporting agency prepared a report containing 'inaccurate' information." *Denan*, 959 F.3d at 294; *see id.* at 298. Although the FCRA does not define "accuracy," the Seventh Circuit has held that "inaccurate information . . . mean[s] factually," rather than legally, "inaccurate information, as consumer reporting agencies are neither qualified nor obligated to resolve legal issues." *Id.* at 296.

Here, Mr. Williams's §§ 1681e(b) and 1681i claims are based on Experian's failure to delete or modify allegedly inaccurate information, furnished by Arvest, relating to his purported delinquency, his monthly payment amounts, and the dates of his last payment.

Compl. ¶¶ 33, 131, dkt. 1. In seeking dismissal, Experian contends that the complaint fails to state plausible §§ 1681e(b) and 1681i claims because Mr. Williams fails to allege a factual inaccuracy. More specifically, Experian maintains that the alleged inaccuracy—namely, that Mr. Williams's January 2022 mortgage payment was "more than 30 days delinquent," Compl. ¶ 33, dkt. 1—is a legal, rather than a factual, inaccuracy and thus not the type of inaccuracy for which Mr. Williams may seek redress under the FCRA.

It is well established that "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claim; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). Here, Experian maintains that Mr. Williams's reported thirty-day delinquency does not, as a matter of law, support viable §§ 1681e(b) and 1681i claims. Experian does not, however, address Mr. Williams's allegations that Arvest furnished and the CRAs inaccurately reported his monthly payment amounts and dates of last payment, Compl. ¶ 33, dkt. 1; dkt. 34 at 9 n.2, except to assert in its reply brief that such allegations (among others) reveal "that the true dispute lies between [Mr. Williams] and Arvest, not the CRA[s]," dkt. 37 at 2 & n.7.

Our task in reviewing the legal sufficiency of a complaint is straightforward: "Where a plaintiff states a plausible claim for relief under one discernable legal theory, 'we start and end there.' " *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021)). *Cf. BBL, Inc.*, 809 F.3d at 325 ("At the summary-judgment stage, the court can properly narrow the individual *factual* issues for trial by identifying the material disputes

of fact that continue to exist.") (emphasis in original). Here, Experian does not contend that inaccurate reports of Mr. Williams's "monthly payment amounts and dates of last payment," Compl. ¶ 33, dkt. 1, fail as a matter of law to support a viable claim under either § 1681e(b) or § 1681i. In challenging only one aspect of Mr. Williams's claims, Experian has failed to demonstrate that dismissal of the Complaint, in its entirety, is warranted.

Several other aspects of the instant motion also merit our attention. In briefing the instant motion, Experian (originally joined by Equifax and Trans Union) and Mr. Williams cite extensively to unpublished district court cases from across the United States. "[D]istrict judges in this circuit must not treat decisions *by other district judges*, in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies." *Colby v. J.C. Penny Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (emphasis in original). Indeed, given that judicial "[o]pinions 'bind' only within a vertical hierarchy," we, as a district court serving the Southern District of Indiana, are bound only by United States Supreme Court and Seventh Circuit precedent, and we otherwise "owe[ ] no more than respectful consideration to the views of other circuits." *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (citing *Colby*, 811 F.2d at 1123). Although we "may look to out of circuit precedent as persuasive authority" where controlling precedent is absent, *Liberty Mut. Fire Ins. Co. v. Clayton*, 33 F.4th 442, 449 (7th Cir. 2022), neither party has shown those circumstances to be present here. It is therefore unclear what persuasive value, if any, the myriad of unpublished district court and/or out-of-circuit decisions bears on the case before us.

In its reply brief, Experian also asserts, for the first time, that Mr. Williams's Complaint fails to identify "specific procedural deficienc[ies]" in its investigative procedures, thereby dooming his claims. Dkt. 37 at 6–8. Reply briefs, however, "are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Ratcliff v. TranStewart Trucking Inc.*, 684 F. Supp. 3d 845, 868 (S.D. Ind. 2023); *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 768 (7th Cir. 2018) ("Our standard is clear: Arguments raised for the first time in a reply brief are waived."). Because Experian did not develop the argument concerning the reasonableness of its procedures in its opening brief, we need not consider whether such a theory supports dismissal of the Complaint.

## CONCLUSION

For the foregoing reasons, Experian's Motion to Dismiss is **DENIED**. Dkt. 24. This case shall proceed accordingly.

IT IS SO ORDERED.

Date:

    8/15/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Guerino Cento
Cento Law
cento@centolaw.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Anne L. Cowgur
Paganelli Law Group
acowgur@paganelligroup.com

Daniel A. Cox
WOOD AND LAMPING LLP
dacox@woodlamping.com

Monica Sheree McCoskey
Paganelli Law Group
monica@paganelligroup.com

Tiffany Middlemas
Jones Day - Chicago
tmiddlemas@jonesday.com

Camille Renee Nicodemus
Quilling Selander Lownds Winslett Moser
cnicodemus@qslwm.com

Neil Peluchette
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
npeluchette@taftlaw.com

Katherine Carlton Robinson
Trans Union, LLC
katherine.carltonrobinson@transunion.com

Heather H Sharp
Seyfarth Shaw LLP
hsharp@seyfarth.com